# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Domingo Flores Aparicio,<br><br>                                    Petitioner,<br><br>                               -v-<br><br>Ken Genalo, *NY Director, Field Office, Enforcement and Removal Operations. U.S. Immigration and Customs Enforcement*; Todd Lyons, *Director, U.S. Immigration and Customs Enforcement*; Markwayne Mullin, *Secretary of the U.S. Department of Homeland Security*; Pamela Bondi, *Attorney General of the United States*;<br><br>                                  Respondents. | 2:26-cv-1411<br>(NJC) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

On March 11, 2026, Domingo Flores Aparicio filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition brings the following claims: that ICE's arrest of Mr. Flores Aparicio violated the Fourth Amendment to the U.S. Constitution; and that ICE's detention of him without notice and opportunity to be heard since March 11, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and is ultra vires and unlawful under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), because it violates 8 U.S.C. §§ 1225(b), 1226(a). The Petition seeks the following relief: (1) a temporary restraining order or writ of habeas corpus requiring Respondents to immediately release Mr. Flores Aparicio; (2) an order enjoying Respondents from re-detaining Mr. Flores Aparicio without notice and an opportunity to be

heard at a pre-deprivation bond hearing; (3) an order requiring Respondents to provide reasonable and timely access to counsel; (4) reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d); and (5) any other further relief the Court deems just and proper. (Compl. at 44.)[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are federal government officials named in their official capacities: (1) Ken Genalo, the Director of the New York Field Office of ICE Enforcement and Removal Operations; (2) Todd M. Lyons, the Acting Director of ICE; (3) Markwayne Mullin, the Secretary of the Department of Homeland Security ("DHS")[2]; and (4) Pam Bondi, the Attorney General of the United States.

---

[1] The Petition also seeks: (1) an order prohibiting Mr. Flores Aparicio's removal from the United States and transfer from the Eastern District of New York pending adjudication of the instant petition, (2) an order requiring Respondents to show cause why the writ should not be granted, (3) an order to produce Mr. Flores Aparicio at a hearing before the Court as necessary to resolve the Petition, and (4) an order requiring production of all custodial and administrative documents supporting detention, the complete Department of Homeland Security administrative file, and a filing certifying the statutory and factual basis for detention. (Pet. at 44.) The Court has effectively granted much if not all of this relief through the issuance of a March 11, 2026 Order to Show Cause, which: (1) required Respondents to provide their response to the Petition by March 14, 2026, at 3:00 p.m., at the latest; (2) prohibited Respondents from removing Mr. Flores Aparicio from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court; and (3) ordered Respondents to produce Mr. Flores Aparicio for a hearing before this Court on March 16, 2026. (*See* ECF No. 5.)

[2] The Petition names Kristi Noem, the former Secretary of Department of Homeland Security, as a Respondent. Pursuant to Fed. R. Civ. P. 25(d), Acting Department of Homeland Security Secretary Markwayne Mullin is automatically substituted for Noem as a Respondent in this action. The Clerk of Court is respectfully directed to update the case caption consistent with this substitution.

Respondents have no objection to this Court deciding the Petition on the papers in lieu of a hearing. (Resp. to Order to Show Cause ("Resp."), ECF No. 7 at 4.)[3] They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (Resp. at 2 (citing Respondents' brief located at ECF No. 14 of *Rodriguez-Acurio*, No. 25-cv-6065).) Respondents argue that ICE's detention of Mr. Flores Aparicio falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 2.) According to Respondents, Section 1225(b)(2) requires Mr. Flores Aparicio's detention, and he has no right to any additional process under the Due Process Clause. Respondents' position is that any noncitizen who entered the United States without authorization at any time is subject to detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal voluntarily dismissed*, No. 26-219 (2d. Cir. Feb. 25, 2026), and that decision is incorporated by reference in its entirety in this Order.

---

[3] Respondents filed their response with submissions consisting of a declaration by Acting Supervising Detention and Deportation Officer Michael Damiano (Declaration of Michael Damiano ("Damiano Decl."), ECF No. 7-1) and several attachments: the February 26, 2024 Order dismissing removal proceedings against Mr. Flores Aparicio (ECF No. 7-2); and an arrest warrant and NTA (ECF Nos. 7-3, 7-4).

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id*. at *22. Here, Mr. Flores Aparicio is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him, Mr. Flores Aparicio had been living in the interior of the United States, primarily in New York, for 29 years (since 1997). (Pet. ¶¶ 12, 25.) On February 26, 2024, an Immigration Judge terminated removal proceedings against Mr. Flores Aparicio without prejudice at the recommendation of DHS trial counsel because of substantial equities and Mr. Flores Aparicio's good moral character. (*Id.* ¶¶ 36–39; ECF No. 7-2.)

Respondents offer no new arguments to support their position that *any* non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Resp.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases

raising this issue are on appeal.[4] The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[5] The Fifth Circuit recently reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.[6]

---

[4] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

[5] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

[6] Respondents rely on *Saamishvili v. Flanagan*, et al., No. 25-cv-6178, 2026 WL 377574, at *3 (E.D.N.Y. Feb. 11, 2026), to support their expansive interpretation of Section 1225(b)(2) in this case. (ECF No. 10). This Court respectfully disagrees with *Saamshvili* about the scope of Section 1225(b)(2). Additionally, the petitioner in that case was subject to an order of removal, and it is unclear whether the removal order was final such that a different INA provision—8 U.S.C §1231(a)(2)(A)—governed the petitioner's detention pending removal.

Moreover, nothing in the record shows that ICE arrested and detained Mr. Flores Aparicio under Section 1225(b)(2) rather than Section 1226(a). (*See* Warrant, ECF No. 7-3 (reflecting that Mr. Flores Aparicio was served with an arrest warrant issued pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)(2)). Respondents first invoked Section 1225(b)(2) as the basis for Mr. Flores Aparicio's detention in the course of this litigation. (*See* Resp. at 2.) The Supreme Court has recognized that a "post-hoc rationalization" first articulated in litigation carries little weight. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*, 591 U.S. 1, 21 (2020) (quoting *Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971)); *see also Islander E. Pipeline Co., LLC v. Connecticut Dep't of Env't Prot.*, 482 F.3d 79, 95 (2d Cir. 2006) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself."). As courts in the Southern District of New York have recognized, "the Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025); *see also Yao v. Almodovar*, No. 25-cv-9982, 2025 WL 3653433, at *4 (S.D.N.Y. Dec. 17, 2025) (discrediting respondents' post-hoc justification for petitioner's detention and finding that "ICE is properly held to its representation, *when it detained* [petitioner], as to the legal basis for that action" (emphasis added)); *see Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Accordingly, ICE's detention of Mr. Flores Aparicio is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8

U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Flores Aparicio has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases.[7] (*See* Resp.; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).) ICE's detention of Mr. Flores Aparicio without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of Mr. Flores Aparicio since March 11, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Flores Aparicio without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a

---

[7] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

high risk of erroneous deprivation through the procedures used to detain Mr. Flores Aparicio because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on March 11, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Flores Aparicio without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Flores Aparicio presents a flight risk or danger to the community. To the contrary, Mr. Flores Aparicio has no criminal history whatsoever and has significant ties to New York. Moreover, removal proceedings against him were terminated on February 26, 2024 with the consent of DHS trial counsel who recommended Mr. Flores Aparicio for the favorable exercise of prosecutorial discretion because of his good moral character and substantial equities, including that he did not pose a flight risk and was not a danger to the community. (Pet. ¶¶ 35–38; ECF No. 7-2.)

Moreover, nothing in the record suggests that any DHS or ICE officer made *any* individualized determination that Mr. Flores Aparicio presented a danger or flight risk prior to ICE's arrest and detention of him on March 11, 2026. Michael Damiano, an Acting Supervisory Deportation Officer with ICE, attests that two U.S. Customs and Border Patrol ("CBP") agents working with ICE conducted a Department of Motor Vehicles ("DMV") records check of a vehicle in Freeport, New York, discovered it was registered in Mr. Flores Aparicio, and then called another ICE officer who ran searches of additional databases to discover that Mr. Flores Aparicio is a Mexican citizen in the United States without authorization. (Decl. of Michael

Damiano ("Damiano Decl."), ECF No. 7-1 ¶¶ 10–12.) Damiano does not address *why* ICE selected Mr. Flores Aparicio's vehicle for such a check. (*Id*.) He attests that he completed and signed a Form I-200 Warrant of Arrest by hand and drove to the location where CBP officers had conducted a vehicle stop and had asked Mr. Flores Aparicio for his identification. (Damiano Decl. ¶¶ 14–15, 17; Form I-200, ECF Nos. 7-1, 7-3.) Damiano attests that when he arrived, he confirmed Mr. Flores Aparicio's identity and informed him that he was under arrest for being unlawfully present in the United States. (*Id.* ¶ 18.)

The parties dispute whether, in fact, the arrest was made without a warrant. Damiano attests that Mr. Flores Aparicio "was shown a copy of the I-200 at the scene of the arrest, but served with the I-200 at the intake facility due to the traffic and congestion at the scene of the arrest." (*Id.* ¶ 25.) Mr. Flores Aparicio was then transported to a "secure location" before being transported to the ICE Nassau County Intake Facility (*Id.* ¶ 21.) Damiano acknowledges that the "face of the Warrant reflects that [Mr. Flores Aparicio] was served with the I-200 at the intake facility." (*Id.* ¶ 24.) Mr. Flores Aparicio maintains that he was arrested without a warrant and that the ICE agents who arrested him "did not present a warrant because none existed." (Pet. ¶¶ 18, 26.)

It is undisputed, however, that there were no pending removal proceedings concerning Mr. Flores Aparicio at the time that he was arrested and detained. ICE did not issue a Notice to Appear charging Mr. Flores Aparicio as being removable until after he arrived at the intake facility. (Damiano Decl. ¶ 26.) As other judges in this District have observed, however, the regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest. *See, e.g., Gopie v. Lyons*, No. 25-cv-52299, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) ("The [Notice to Appear] begins the removal process, and *at that*

*time or after its issuance*, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed." (emphasis added)); *Maldonado v. Bostock*, No. 2:23-cv-760, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023) ("Section 236.1(b) states that certain immigration officers have authority to issue and serve a Form I-200 arrest warrant at the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed. That does not mean that DHS may trigger Section 1226(a) at any time and in any circumstance . . . by issuing an arrest warrant."); *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1224 (S.D. Cal. 2019) ("DHS regulations authorize an immigration officer to formally arrest and take the alien into custody pursuant to a Form I-200 Warrant of Arrest *at the time* [a Notice to Appear] is issued." (emphasis added)); *Castanon Nava v. Dep't of Homeland Sec.,* 806 F. Supp. 3d 823 (N.D. Ill. 2025) (rejecting the notion that ICE can issue Form I-200 warrants immediately upon identifying a noncitizen unlawfully present in the United States).

At no point during these events did any of the officers involved conduct an initial custody determination to determine whether Mr. Flores Aparicio presented a risk of flight or danger to the community. (Pet. ¶ 27.) Based on the record, the ICE officers who arrested and detained Mr. Flores Aparicio had no reason to believe that he presented any such risks.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Flores Aparicio's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings— Respondents' detention of Mr. Flores Aparicio with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr.

Flores Aparicio was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2).[8] *See Lopez Benitez*, 795 F. Supp. 3d at 486; *Rueda Torres*, 2025 WL 3168759, at *5.

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Flores Aparicio from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Flores Aparicio is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a

---

[8] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Flores Aparicio, that provision is plainly inapplicable to him. Mr. Flores Aparicio is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id.* at *15. Accordingly, ICE's detention of Mr. Flores Aparicio since March 11, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Flores Aparicio is not rendered meaningless.

Additionally, Mr. Flores Aparicio "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to his unlawful detention, Mr. Flores Aparicio was not subject to any electronic monitoring requirements by ICE. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and "restor[ing] . . . the status quo ante," *Khabazha*, 2025 WL 3281514, at *8, requires that Respondents release Mr. Flores Aparicio without any condition for electronic monitoring, including but not limited to GPS monitoring.

## CONCLUSION

Accordingly for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted in part. Respondents must coordinate with Petitioner's counsel and thereafter release Petitioner, without any electronic monitoring, including but not limited to GPS monitoring, into the physical care of their counsel or another mutually agreed upon person at the earliest possible time agreed upon by the parties, but no later than **10:00 pm tonight**. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to <u>all identification cards</u>, clothing, and money. Respondents shall confirm compliance with these directives, including <u>by identifying the</u>

<u>individual to whom Petitioner was released and confirming that all identification cards and other belongings were in fact returned</u>, in a filing on the docket by March 12, 2026 at Noon.

Additionally, pending the issuance of any final removal order against Mr. Flores Aparicio, Respondents are enjoined from denying Mr. Flores Aparicio bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Flores Aparicio may file an application for attorneys' fees and costs incurred in pursuing this action by June 10, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Flores Aparicio the requested relief, including arguments that the arrest violates the Fourth Amendment and that his detention is ultra vires and unlawful under *Accardi*, 347 U.S. 260, are now moot and unnecessary to resolve because Mr. Flores Aparicio does not explain what additional relief he seeks under these claims.

The Show Cause hearing scheduled for March 16, 2026 at 2:00 p.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
March 12, 2026

   */s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge